EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
GREGORY S. SCALLY (Cal. Bar No. 268073)
Assistant United States Attorney
Santa Ana Branch Office
8000 United States Courthouse
411 West Fourth Street
Santa Ana, California 92701
Telephone: (714) 338-3592
Facsimile: (714) 338-3708
E-mail: gregory.scally@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>FABIAN JALILVAND TEHRANI<br><br>A fugitive from the Government of Germany. | No. CV 16-4127<br><br><u>UNITED STATES' EXTRADITION MEMORANDUM</u> |

Complainant United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its Extradition Memorandum.

///

///

///

The Memorandum is based on all of the documents and exhibits previously lodged and filed with the Court (in both original and redacted forms), which were submitted by the Government of Germany in support of its request for extradition in support of extradition in this matter.

Dated: August 12, 2016

Respectfully submitted,

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

/s/
GREGORY S. SCALLY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**....................................................ii
**MEMORANDUM OF POINTS AND AUTHORITIES**....................................1

I. INTRODUCTION...............................................................1

II. LEGAL FRAMEWORK AND ARGUMENT...........................................2

A. Applicable Law Concerning Extradition Hearings..........2

1. Sui Generis Nature of Extradition Proceedings.......2

2. General Standards and the Elements of Extradition...3

3. Probable Cause Determination........................5

4. Rules of Criminal Procedure and Evidence Do Not Apply ....................................................6

5. Limitations on Fugitive's Evidence..................7

6. The Rule of Non-Inquiry.............................9

B. THE ELEMENTS FOR EXTRADITION ARE MET....................10

1. There is Subject Matter Jurisdiction...............10

2. There is Personal Jurisdiction.....................10

3. Fugitive is the Person Sought in Germany...........11

4. Extradition Treaty Is in Force.....................11

5. Fugitive Is Sought for Offenses Covered by the Treaty ...................................................12

6. There Is Probable Cause............................15

a. Background.....................................17

b. Cases 1 through 5..............................17

c. Case 6.........................................18

d. Case 7.........................................20

e. Case 8.........................................20

III. CONCLUSION..............................................................21

# TABLE OF AUTHORITIES

**PAGES**

Afanasjev v. Hurlburt,
418 F.3d 1159 (11th Cir. 2005) ........................ 2, 6, 16

Arnbjornsdottir-Mendler v. United States,
721 F.2d 679 (9thCir. 1983) ................................ 9

Austin v. Healey,
5 F.3d 598 (2d Cir. 1993) .................................. 10

Barapind v. Enomoto,
400 F.3d 744 (9th Cir. 2005) (en banc) ............... 7, 8, 16

Benson v. McMahon,
127 U.S. 457 (1888) .................................. 2, 15

Bingham v. Bradley,
241 U.S. 511 (1916) ...................................... 5, 6

Bovio v. United States,
989 F.2d 255 (7th Cir. 1993) ............................... 8

Charlton v. Kelly,
229 U.S. 447 (1913) ................................ 2, 8, 12

Collins v. Loisel,
259 U.S. 309 (1922) ............................. 5, 6, 8, 13

Collins v. Loisel,
262 U.S. 426 (1923) ......................................... 6

Cucuzzella v. Keliikoa,
638 F.2d 105 (9th Cir. 1981) ......................... 4, 13

DeSilva v. DiLeonardi,
125 F.3d 1110 (7th Cir. 1997) ............................... 8

## TABLE OF AUTHORITIES (CONTINUED)


**PAGES**

Eain v. Wilkes,
641 F.2d 504 (7th Cir. 1981) ........................... 8, 21

Emami v. U.S. Dist. Court for N. Dist.,
834 F.2d 1444 (9th Cir. 1987) .......................... 6, 13

Factor v. Laubenheimer,
290 U.S. 276 (1933) ....................................... 4, 5

Fernandez v. Phillips,
268 U.S. 311 (1925) ...................................... 5, 16

Glucksman v. Henkel,
221 U.S. 508 (1911) ....................................... 6, 9

Greci v. Birknes,
527 F.2d 956 (1st Cir. 1976) ............................... 6

Hooker v. Klein,
573 F.2d 1360 (9th Cir. 1978) .......................... 8, 13

Hoxha v. Levi,
465 F.3d 554 (3d Cir. 2006) ............................... 15

In re Extradition of Gonzalez,
217 F. Supp. 717 (S.D.N.Y. 1963) ........................... 9

In re Extradition of Mainero
990 F. Supp. 1208(S.D. Cal. 1997) ..................... 11, 12

In re Extradition of Manzi,
888 F.2d 204 (1st Cir. 1989) .............................. 13

In re Extradition of McMullen,
989 F.2d 603 (2d Cir. 1993) ................................ 6

In re Lincoln,
228 F. 70 (E.D.N.Y. 1915) .................................. 9

**TABLE OF AUTHORITIES (CONTINUED)**

**PAGES**

In re Ryan,
360 F. Supp. 270 (E.D.N.Y. 1973) .......................... 12

Jhirad v. Ferrandina,
536 F.2d 478 (2d Cir. 1976) ............................. 2, 7

Jimenez v. Aristeguieta,
311 F.2d 547 (5th Cir. 1962) ............................. 10

Kolovrat v. Oregon,
366 U.S. 187 (1961) ...................................... 12

Koskotas v. Roche,
931 F.2d 169 (1st Cir. 1991) ............................. 6

Lo Duca v. United States,
93 F.3d 1100 (2d Cir. 1996) .............................. 3

Lopez-Smith v. Hood,
121 F.3d 1322 (9th Cir. 1997) ............................ 9

Mainero v. Gregg,
164 F.3d 1199 (9th Cir. 1999) ........................... 6, 7

Martin v. Warden,
993 F.2d 824 (11th Cir. 1993) ......................... 2, 3, 6

Melia v. United States,
667 F.2d 300 (2d Cir. 1981) .............................. 6

Messina v. United States,
728 F.2d 77 (2d Cir. 1984) ............................... 6

Mirchandani v. United States,
836 F.2d 1223 (9th Cir. 1988) .......................... 5, 15

Neely v. Henkel,
180 U.S. 109 (1901) ..................................... 2, 8

## TABLE OF AUTHORITIES (CONTINUED)

**PAGES**

Ordinola v. Hackman,
478 F.3d 588 (4th Cir. 2007) .............................. 4

Ornelas v. Ruiz,
161 U.S. 502 (1896) ...................................... 5

Prasoprat v. Benov,
421 F.3d 1009 (9th Cir. 2005) ........................... 6, 9

Quinn v. Robinson,
783 F.2d 776 (9th Cir. 1986) ...................... 4, 7, 8, 9

Romeo v. Roache,
820 F.2d 540 (1st Cir. 1987) ............................. 6

Sabatier v. Dabrowski,
586 F.2d 866 (1st Cir. 1978) ............................. 6

Shapiro v. Ferrandina,
478 F.2d 894 (2d Cir. 1973) ............................ 3, 8

Sidali v. INS,
107 F.3d 191 (3d Cir. 1997) ............................. 16

Simmons v. Braun,
627 F.2d 635 (2d Cir. 1980) .............................. 6

Sumitomo Shoji Am., Inc. v. Avagliano,
457 U.S. 176 (1982) ..................................... 12

United States ex rel. Sakaguchi v. Kaulukukui,
520 F.2d 726 (9th Cir. 1975) ............................. 5

United States v. Lui Kin-Hong,
110 F.3d 103 (1st Cir. 1997) ............................. 9

United States v. Wiebe,
733 F.2d 549 (8th Cir. 1984) ............................. 4

## TABLE OF AUTHORITIES (CONTINUED)

PAGES

Valencia v. Limbs,
655 F.2d 195 (9th Cir. 1981) .............................. 5

Ward v. Rutherford,
921 F.2d 286 (D.C. Cir. 1990) ............................. 10

Yapp v. Reno,
26 F.3d 1562 (11th Cir. 1994) ............................. 6

Zanazanian v. United States,
729 F.2d 624 (9th Cir. 1984) .............................. 4

STATUTES

18 U.S.C. § 1014 ....................................... 15

18 U.S.C. § 1344 ....................................... 15

18 U.S.C. § 3181 ....................................... 11

18 U.S.C. § 3184 ........................... 1, 2, 8, 9, 10

18 U.S.C. § 3190 ....................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 2, 2016, fugitive FABIAN JALILVAND TEHRANI ("TEHRANI" or "the fugitive") was arrested in this district pursuant to a complaint and arrest warrant issued by the Honorable Karen E. Scott, United States Magistrate Judge, seeking TEHRANI's extradition to Germany, pursuant to an extradition treaty between Germany and the United States, signed on June 20, 1978, the Supplementary Treaty to the Extradition Treaty between the United States and Germany signed October 21, 1986, and the Second Supplementary Treaty to the Extradition Treaty between the United States of America and Germany, signed April 18, 2006 (collectively, "the Treaty"), and pursuant to 18 U.S.C. § 3184 et seq.

On June 10, 2016, the United States lodged with this Court the original formal request by Germany to the United States Department of State for the fugitive's extradition, supported by the formal documents required by the Treaty, and filed a redacted version on the public docket.[1] The United States acts on behalf of the Government of Germany in accordance with its treaty obligations. By statute, the judicial officer handling the extradition is required to hold a hearing to consider the evidence of criminality presented by Germany and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18

---

[1] The instant request for extradition is based upon all of the documents submitted by the Government of Germany, which have been filed with the Court in both original and redacted forms. For ease of reference, the exhibits relied upon herein will be referred to as "MJ" and page number to refer to documents appearing on the docket under 8:16-MJ-250, and "CV" and page number to refer to documents appearing on the docket under 2:16-CV-4127-CAS-E.

U.S.C. § 3184. If the fugitive is found extraditable, the judicial officer certifies that conclusion to the Secretary of State, who decides whether to surrender the fugitive. Because the law regarding extradition is sui generis, differing substantially from ordinary criminal or civil proceedings, the United States offers this memorandum as a guide to the nature of the extradition hearing and the application of the Treaty to the facts of this case.

## II. LEGAL FRAMEWORK AND ARGUMENT

### A. Applicable Law Concerning Extradition Hearings

#### 1. Sui Generis Nature of Extradition Proceedings

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique in nature. See, e.g., Martin v. Warden, 993 F.2d 824, 828 (11th Cir. 1993); Jhirad v. Ferrandina, 536 F.2d 478, 482 (2d Cir. 1976). As described in Jhirad, an extradition hearing is sui generis, meaning its own type of case, with its structure and process defined by statute and treaty. Jhirad, 536 F.2d at 482. An extradition hearing is not a criminal proceeding; its purpose is to decide the sufficiency of the charge under the relevant treaty, not guilt or innocence. Neely v. Henkel, 180 U.S. 109, 123 (1901); Benson v. McMahon, 127 U.S. 457, 463 (1888); Afanasjev v. Hurlburt, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005).

The limited nature of the hearing has resulted in special procedural and evidentiary rules that apply. For example, the person whose extradition is sought is not entitled to the rights available in a criminal trial. Neely, 180 U.S. at 122 (rights available to one charged with criminal offense in this country not applicable to offenses committed outside the United States against the laws of another country); accord Charlton v. Kelly, 229 U.S.

447, 461 (1913); Martin, 993 F.2d at 829. The purpose of an extradition hearing under Section 3184 is not to try the underlying charge; that is for the foreign court. Neely, 180 U.S. at 123.

2. General Standards and the Elements of Extradition

Extradition is primarily an executive responsibility with a specially defined role for a judicial officer. That judicial officer is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." 18 U.S.C. § 3184. The Secretary of State, and not the Court, decides whether the fugitive should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; Martin, 993 F.2d at 828; Lo Duca v. United States, 93 F.3d 1100, 1110 n.10 (2d Cir. 1996).

At the extradition hearing, the Court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification, as defined in the relevant treaty, statutes, and case law, have been established. If any explanatory evidence is offered by the fugitive (see infra), the Court rules on its admissibility. Once the evidentiary record is complete, the extradition judge should make findings on each of the elements for certification, including separate findings for each offense as to which extradition is sought. Shapiro v. Ferrandina, 478 F.2d 894 (2d Cir. 1973). If the extradition magistrate decides that the elements necessary for extradition are present, he or she must issue a certificate of extraditability, which is forwarded to

the Department of State for disposition by the Secretary of State. 18 U.S.C. § 3184.[2]

In order to issue a certificate of extraditability, the extradition magistrate must find that: (1) the extradition magistrate has jurisdiction to conduct extradition proceedings; (2) the extradition magistrate has jurisdiction over the fugitive; (3) an extradition treaty is in force; (4) the fugitive is being sought for offenses for which the applicable treaty permits extradition; and (5) there is sufficient evidence to establish that the individual appearing in court is the fugitive who is charged and probable cause to believe that the fugitive committed the offense for which extradition is requested. See Quinn v. Robinson, 783 F.2d 776, 783, 790 (9th Cir. 1986); Zanazanian v. United States, 729 F.2d 624, 625-26 (9th Cir. 1984).

When interpreting an extradition treaty, the extradition magistrate must construe its provisions liberally, in a manner favoring the obligation to surrender fugitives. See Factor v. Laubenheimer, 290 U.S. 276, 293-94, 298, 303 (1933); United States v. Wiebe, 733 F.2d 549, 554 (8th Cir. 1984); Cucuzzella v. Keliikoa, 638 F.2d 105, 107 n.3 (9th Cir. 1981) ("[T]reaties should be construed to enlarge the rights of the parties"). Moreover, the

---

[2] If the Court certifies the evidence to the Secretary of State, the Court must commit the fugitive to the custody of the United States Marshal to await further determination by the Secretary regarding surrender to the representatives of the requesting state. 18 U.S.C. § 3184. The Court should then forward, or have forwarded, a certified copy of the certification and commitment order to the Secretary of State, together with a copy of any evidence outside the formal extradition package and a transcript of any testimony at the hearing. 18 U.S.C. § 3184; see Ordinola v. Hackman, 478 F.3d 588, 597 (4th Cir. 2007).

obligation to surrender the fugitive to be tried for his alleged offenses "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." Factor, 290 U.S. at 298. Accordingly, "[f]orm is not to be insisted upon beyond the requirements of safety and justice," Fernandez v. Phillips, 268 U.S. 311, 312 (1925), and objections that "savor of technicality" do not find favor in court. Bingham v. Bradley, 241 U.S. 511, 517-18 (1916).

3. Probable Cause Determination

The extradition magistrate is not authorized to determine whether the evidence is sufficient to justify conviction, as that determination will be made by the foreign court that handles the case. See Collins v. Loisel, 259 U.S. 309, 316 (1922); Quinn, 783 F.2d at 815; Valencia v. Limbs, 655 F.2d 195, 198 (9th Cir. 1981). The extradition magistrate need only determine whether there is probable cause to believe that the fugitive committed the offense or offenses for which extradition is sought. Ornelas v. Ruiz, 161 U.S. 502, 512 (1896).

In the extradition context, the Ninth Circuit has explicated the probable cause standard as asking "whether there was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." Mirchandani v. United States, 836 F.2d 1223, 1226 (9th Cir. 1988) (quoting Fernandez v. Phillips, 268 U.S. 311, 312 (1925)); see also United States ex rel. Sakaguchi v. Kaulukukui, 520 F.2d 726, 730-31 (9th Cir. 1975) ("magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause"). As to the form of the evidence, extradition is proper where the standard is met if the

proof "is presented[], even in somewhat untechnical form according to our ideas." Glucksman v. Henkel, 221 U.S. 508, 512 (1911) (affirming extradition despite minor or technical objections).

4. Rules of Criminal Procedure and Evidence Do Not Apply

The Federal Rules of Criminal Procedure do not apply to extradition proceedings. Rule 1(a)(5) states that the rules are not applicable to the "extradition and rendition of a fugitive." The Federal Rules of Evidence are also inapplicable.[3] An example of the difference between a criminal trial and an extradition is that, in the latter, hearsay is permitted. Collins, 259 U.S. at 317; Mainero v. Gregg, 164 F.3d 1199, 1206 (9th Cir. 1999) ("it is well settled in this circuit that evidence [in an extradition proceeding] is not incompetent simply because it is hearsay"), superseded by statute on other grounds, Pub.L. No. 105-277, § 2242, 1999 U.S.C.C.A.N. (112 Stat. 2681); Emami v. U.S. Dist. Court for N. Dist., 834 F.2d 1444, 1451 (9th Cir. 1987) ("In the Ninth Circuit it has been repeatedly

[3] Rule 1101(d)(3) provides: "The rules (other than with respect to privileges) do not apply . . . [to] proceedings for extradition or rendition." See also Afanasjev, 418 F.3d at 1164-65; Melia v. United States, 667 F.2d 300 (2d Cir. 1981); Greci v. Birknes, 527 F.2d 956 (1st Cir. 1976). Moreover, the fugitive has no right to discovery, Prasoprat v. Benov, 421 F.3d 1009, 1014 (9th Cir. 2005); Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir. 1991); Messina v. United States, 728 F.2d 77, 80 (2d Cir. 1984); there is no Sixth Amendment right to a speedy trial, Yapp v. Reno, 26 F.3d 1562, 1565 (11th Cir. 1994); Martin, 993 F.2d at 829; Sabatier v. Dabrowski, 586 F.2d 866, 869 (1st Cir. 1978); the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings, Collins v. Loisel, 262 U.S. 426, 429 (1923); In re Extradition of McMullen, 989 F.2d 603, 612-13 (2d Cir. 1993); the exclusionary rule is not applicable, Romeo v. Roache, 820 F.2d 540, 545 (1st Cir. 1987); Simmons v. Braun, 627 F.2d 635, 636-37 (2d Cir. 1980); and the fugitive does not have the right to confront witnesses whose written statements are used against him, Bingham, 241 U.S. at 517.

held that hearsay evidence that would be inadmissible for other purposes is admissible in extradition”).[4]

Further, the calling of live witnesses is not contemplated at extradition proceedings. An extradition proceeding is not a trial. Indeed, the very purpose of extradition treaties is "to obviate the necessity of confronting the accused with the witnesses against him.” Mainero, 164 F.3d at 1207 (internal quotations and citation omitted); see also Quinn, 783 F.2d at 815-16 (“[b]arring hearsay from extradition proceedings would thwart one of the objectives of bilateral extradition treaties”).

Documents that bear the certificate or seal of the Ministry of Justice of Germany “shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization.” (Treaty, Article 29, MJ 1 at 35 of 82; Article 6, MJ 1 at 34-35 of 82.) “Germany, in submitting documents in the instant case that bear the certificate or seal of the Ministry of Justice, has complied with the treaty’s provision on authentication.” Kiingi Decl. (MJ 1 at 25-27 of 82.)

5. Limitations on Fugitive’s Evidence

The fugitive’s grounds for opposing an extradition request are limited. A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country “[b]ecause extradition courts do not weigh conflicting evidence in making their probable cause determinations.” Barapind v. Enomoto, 400 F.3d 744,

---

[4] Indeed, “[a] determination of probable cause in an extradition proceeding may rest entirely upon hearsay.” In re Ryan, 360 F. Supp. 270, 273 (E.D.N.Y. 1973), aff'd sub nom. In re Christensen, 478 F.2d 1392 (2d Cir. 1973).

749 (9th Cir. 2005) (en banc) (internal quotation marks and citation omitted). In other words, the fugitive cannot offer evidence that would lead to an evidentiary dispute. See Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978); Barapind, 400 F.3d at 749-50. That is necessarily so because the introduction of such evidence "would convert the extradition into a full-scale trial, which it is not to be." Eain v. Wilkes, 641 F.2d 504, 511 (7th Cir. 1981); see also Hooker, 573 F.2d at 1368 (a person fighting extradition is "not permitted to introduce evidence on the issue of guilt or innocence"). A fugitive may therefore only introduce evidence explaining the evidence submitted in support of the extradition request. Barapind, 400 F.3d at 749. Hence, the extradition magistrate does not weigh conflicting evidence and determine what to credit, "but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." Quinn, 783 F.2d at 815.

It is also well settled that affirmative defenses to the merits of the charge are not to be entertained in extradition hearings. Charlton, 229 U.S. at 462; Collins, 259 U.S. at 316-17; Hooker, 573 F.2d at 1368; DeSilva v. DiLeonardi, 125 F.3d 1110, 1112 (7th Cir. 1997). A fugitive may not introduce evidence that (1) merely conflicts with the evidence submitted on behalf of the demanding state, Collins, 259 U.S. at 315-17; (2) attempts to establish an alibi, Shapiro, 478 F.2d at 901; (3) suggests an insanity defense, Charlton, 229 U.S. at 462; or (4) seeks to impeach the credibility of the demanding country's witnesses, Bovio v. United States, 989 F.2d 255, 259 (7th Cir. 1993). These issues, which require factual

and credibility determinations, are for the court in the requesting country to resolve at a trial of the charges.

6. The Rule of Non-Inquiry

The Court should not look behind the extradition request into the motives of the requesting country. As stated in In re Lincoln, 228 F. 70, 74 (E.D.N.Y. 1915):

> [I]t is not a part of the court proceedings nor of the hearing upon the charge of crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith. Such matters should be left to the Department of State.

Accord Quinn, 783 F.2d at 789; see also In re Extradition of Gonzalez, 217 F. Supp. 717, 722 n.15 (S.D.N.Y. 1963) (18 U.S.C. § 3184 gives the court no authority to inquire into such matters).

In addition, the Court should not investigate the fairness of the requesting country's justice system. United States v. Lui Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997). It is the role of the Secretary of State, not judicial officers, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment the fugitive will likely receive on return to the requesting country. Prasoprat, 421 F.3d at 1016.[5]

---

[5] See also Lopez-Smith v. Hood, 121 F.3d 1322, 1327 (9th Cir. 1997) (courts generally refrain from examining penal systems of requesting nations); Arnbjornsdottir-Mendler v. United States, 721 F.2d 679, 683 (9th Cir. 1983) ("The rationale is that such matters are to be determined solely by the executive branch"), superseded by statute on other grounds, Pub.L. No. 105-277, § 2242, 1999 U.S.C.C.A.N. (112 Stat. 2681). As Justice Holmes said, "[w]e are bound by the existence of an extradition treaty to assume that the trial will be fair." Glucksman, 221 U.S. at 512.

**B. THE ELEMENTS FOR EXTRADITION ARE MET**

In the instant case, the elements necessary for the Court to certify the fugitive's eligibility for extradition have been met. There is subject matter and personal jurisdiction over the fugitive. A valid extradition treaty permits extradition for the offenses charged in Germany. And there is probable cause to believe that the fugitive committed those offenses.

1. There is Subject Matter Jurisdiction

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. Consequently, both magistrate judges and district judges may render a "certification" under Section 3184. See Austin v. Healey, 5 F.3d 598, 601-02 (2d Cir. 1993) (magistrate had authorization to conduct the extradition hearing without specific delegation of authority); Ward v. Rutherford, 921 F.2d 286, 287 (D.C. Cir. 1990) (both statute and local rule made plain magistrate's authority to conduct extradition hearing); Jimenez v. Aristeguieta, 311 F.2d 547, 553-55 (5th Cir. 1962) (any judicial officer in class authorized by statute may conduct extradition hearing). Here, General Order 05-07 of the United States District Court for the Central District of California also delegates to magistrate judges the authority to handle extradition matters.

2. There is Personal Jurisdiction

A magistrate judge in the Central District of California has jurisdiction over the fugitive because TEHRANI was "found" in this district when he was arrested on the extradition warrant at his

residence in Tarzana, California, which is in this district, on June 2, 2016. See In re Extradition of Mainero (Mainero I), 990 F. Supp. 1208, 1216 (S.D. Cal. 1997). When the fugitive is "found within [this] jurisdiction," the personal jurisdictional requirement of 18 U.S.C. § 3184 is met.

3. Fugitive is the Person Sought in Germany

The person before this Court is the person named in the German arrest warrant for this offense. The fugitive admitted his true name as charged at his initial appearance on June 2, 2016, before the Honorable Rozella A. Oliver, United States Magistrate Judge. The defense here has not contested the identity of the fugitive as being the person charged; to the contrary, in TEHRANI's papers requesting bail, he has asserted his possession of an immigrant visa and driver's license in the name under which Germany seeks to extradite him. (MJ 9 at 2, 5.) Further, the photograph on the passport included in the Formal Papers depicts the person involved in these proceedings. Also, the date of birth on the arrest warrant matches the date of birth on TEHRANI's California driver's license. (See Complaint, MJ 1, ¶ 7.) Finally, the date of birth and height included in the Formal Papers are also consistent with the appearance of the person in these proceedings.

4. Extradition Treaty Is in Force

There is an extradition treaty in full force and effect between the United States and Germany. See 18 U.S.C. § 3181 (Historical and Statutory Notes); see also Kiingi Decl.[6] The State Department's

---

[6] The formal copy of the Treaty can be found in the manually lodged papers. Another copy can be found in MJ 1, at pages 30-82. The formal copy of the Kiingi Declaration can be found in the

conclusion that the Treaty is in full force and effect, as expressed in the Kiingi Declaration, is entitled to deference. See Kolovrat v. Oregon, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight"); accord Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 184 (1982); Charlton, 229 U.S. at 468; see also Mainero I, 990 F. Supp. at 1216 (giving deference to State Department's opinion that extradition treaty was in full force and effect).

5. Fugitive Is Sought for Offenses Covered by the Treaty

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty. United States v. Alvarez-Machain, 504 U.S. 655, 664 (1992) ("Extradition treaties exist so as to impose mutual obligations to surrender individuals in certain defined sets of circumstances, following established procedures.").

The Extradition Treaty between the United States and Germany provides that "[e]xtraditable offenses under the Treaty are offenses which are punishable under the laws of both Contracting Parties." Extradition Treaty, signed June 20, 1978, Article 2(1), as amended by the First Supplementary Extradition Treaty, signed October 21, 1986, Article 1(a) (MJ 1 at 42 of 82.)

This "dual criminality" requirement does not mean that the German crimes must be identical to a United States offense; all that

---

manually lodged papers; another copy can be found in MJ 1, at pages 25-27.

is required under extradition law is that the underlying acts be punishable under both legal systems. See Collins v. Loisel, 259 U.S. 309, 312 (1922) ("The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions."); Emami v. U.S. District Court for N. Dist. Cal., 834 F.2d 1444, 1450 (9th Cir. 1987) (same); United States v. Khan, 993 F.2d 1368, 1372 (9th Cir. 1983 ("Many cases have held that dual criminality is satisfied even though the names of the crimes and the required elements were different in the two countries."); Cucuzella, 638 F.2d at 108 ("The crimes need not be identical.").

Indeed, the Treaty provides that "[i]n determining what is an extraditable offense, it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offense or demonstrate an offense by the same terminology . . ." Extradition Treaty, signed June 20, 1978, Article 2(1), as amended by the First Supplementary Extradition Treaty, signed October 21, 1986, Article 1(a) (MJ 1 at 42 of 82.)

In determining whether an offense is punishable under the laws of both countries, courts properly look to the underlying acts to determine whether they violate United States federal law, the law of the state in which the hearing is held, or the law of the preponderance of the states. See Cucuzzella, 638 F.2d at 107; Matter of Extradition of Manzi, 888 F.2d 204, 207 (1st Cir. 1989).

The Treaty also requires that the crimes be punishable by more than one year of incarceration in both Germany and the United

States. See Extradition Treaty, signed June 20, 1978, Article 2(2)(a) ("Extradition shall be granted in respect of an extraditable offense: (a) For prosecution, if the offense is punishable under the laws of both Contracting Parties by deprivation of liberty for a maximum period exceeding one year.") (MJ 1 at 51-52 of 82).

TEHRANI has been charged in Germany with eight counts of completed or attempted[7] Collusive Commercial Fraud (Cases 1-8), and three counts of Collusive Commercial Falsification of Documents (Cases 6-8). (See Prosecutor's Letter at 5 of 8, MJ 1 at 14 of 82.) A person commits fraud if the person "damages the property of a third party by inciting and maintaining an error through the fraudulent misrepresentation or distortion or suppression of real facts with the intention of unlawfully acquiring pecuniary benefits for himself/herself or another third party." German Criminal Code, § 263(1) (arrest warrant, MJ 1 at 22 of 82). A fraud charge is punishable in Germany by imprisonment for a term of up to five years and possibly as much as ten years. See German Criminal Code, § 263(1), (3)(1) (arrest warrant, MJ 1 at 22-23 of 82).

A person commits Falsification of Documents if he "creates a non-authentic document, falsifies an authentic document or uses a non-authentic or falsified document for the purpose of deception in legal transaction." German Criminal Code, § 267(1) (arrest warrant, MJ 1 at 23 of 82). Such a charge is punishable by up to five years and possibly as much as ten years. See German Criminal Code § 267(1), (3)(1) (MJ 1 at 23 of 82).

---

[7] All counts are completed except Case 7. See Arrest Warrant. (MJ 1 at 18 of 82.)

United States federal law would be violated by the fugitive's conduct, had that conduct taken place here. For example, for each of cases 1 through 8, defendant could be charged with Bank Fraud under 18 U.S.C. § 1344(1) or (2). Additionally, for each of cases 1 through 8, defendant could be charged with False Statement to a Bank or Other Federally Insured Institution under 18 U.S.C. § 1014.

Under United States federal law, the maximum punishment for Bank Fraud is 30 years. 18 U.S.C. § 1344. The maximum punishment for False Statement to a Bank is 30 years. 18 U.S.C. § 1014. As a result, the fugitive's conduct amounts to felony fraud and forgery in both the United States and in Germany, bringing the offenses for which he is sought within the scope of the Treaty.

6. <u>There Is Probable Cause</u>

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause. The Court must conclude that there is probable cause to believe that the crime charged by Mexico was committed and the person before the Court committed it. <u>Hoxha v. Levi</u>, 465 F.3d 554, 561 (3d Cir. 2006). The evidence is sufficient, and probable cause is established, if "there was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." <u>Mirchandani</u>, 836 F.2d at 1226. The Supreme Court stated in <u>Benson</u>, 127 U.S. at 463:

> the proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by

> imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

See also Collins, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); Fernandez, 268 U.S. at 312 ("Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict."); accord Afanasjev, 418 F.3d at 1165 n.11; Barapind, 400 F.3d at 752; Sidali v. INS, 107 F.3d 191, 199 (3d Cir. 1997).

Where an arrest warrant and prosecutor's letter state the source of the allegations and describe the evidence in support thereof, such an arrest warrant and prosecutor's letter are sufficient to establish probable cause. See Manta v. Chertoff, 518 F.3d 1134, 1139-40, 1145-47 (9th Cir. 2008) (probable cause determination of magistrate judge upheld where magistrate relied on investigation report written by prosecutor).

Here, the facts set forth in the extradition request submitted by Germany establish probable cause to believe that TEHRANI committed the offenses of completed and attempted Collusive Commercial Fraud and Collusive Commercial Falsification of Documents. The following facts may reasonably be derived from the formal papers embodying the Government of Germany's request, including the arrest warrant, Prosecutor's Letter, and supplemental letters:

a. Background

The investigations began with several money-laundering related suspicious activity reports filed by several banks in the years 2010 and 2011 regarding suspicious cash transactions by TEHRANI and his father, SAEED DJALILVAND TEHRANI ("SAEED TEHRANI" or "TEHRANI's father"). (Prosecutor's Letter at 2 of 8; MJ 1 at 11 of 82.) On May 18, 2011, a search was conduct – on the basis of a court decision – of the residential apartment of SAEED TEHRANI in Aachen, Germany, where TEHRANI was also staying. (Id.) Within the scope of the search, several computers and data carriers with falsified pay slips, falsified employment contracts, and several bank and credit cards were recovered. (Id.) Those documents were analyzed. (Id.)

b. Cases 1 through 5

Both TEHRANI and SAEED TEHRANI left Germany after the search. (Prosecutor's Letter at 3 of 8; MJ 1 at 12 of 82.) SAEED TEHRANI was later arrested in Sweden, and successfully prosecuted and convicted and sentenced to two years of imprisonment by the Regional Court of Aachen in 2013 for four counts of fraud. (Id. at 13 of 82.) Through analysis of the documents recovered in the search of the apartment, it was determined that TEHRANI and SAEED TEHRANI had opened bank accounts with several banks in the period between October 15, 2009, and June 16, 2010, conducting a fraudulent scheme as follows: they would pretend to be willing to make payments to balance the accounts, but, in accordance with their fraudulent scheme, instead knowingly overdrew the accounts and failed to balance them, thereby acquiring monetary benefits for themselves. (Id. at 11-12 of 82; see also analysis report of Police Officer Luzat dated July 1, 2011 at 007-014; CV 20-3 at 8-15 of 18; see also

arrest warrant, MJ 1 at 19 of 82.) There were several transfers between the accounts of TEHRANI and those of SAEED TEHRANI. (MJ 1 at 12 of 82.) Both TEHRANI and SAEED TEHRANI had unfettered access to each other's computers and falsified documents. (Id.) Data files of both TEHRANI and SAEED TEHRANI were found in the computers. (Id.) Cases 1 through 3 are based on four accounts in the name of SAEED TEHRANI, with deficits of approximately 14,000 euros, 3,500 euros, 60 euros, and 6,900 euros respectively, totaling a deficit of 25,220.79 euros.[8] Cases 4 and 5 are based on two accounts opened by TEHRANI, with deficits of approximately 28,500 euros, 18,700 euros, and 5,700 euros, totaling a deficit of 53,009.24 euros.[9]

c. Case 6

Case 6 grows out of a loan for the purchase of a property. On May 6, 2010, SAEED TEHRANI took out a loan from Sparkasse Aachen, a

---

[8] More specifically, Case 1 is based on an account opened by SAEED TEHRANI on June 16, 2010, at Commerzbank, domiciled in "Frankfurt am Main," which had a negative balance of €14,570.04 on January 7, 2011, and another account opened at the same bank on the same date by SAEED TEHRANI which had a negative balance of €3,655.74 on April 12, 2011. (See arrest warrant, MJ 1 at 19 of 82.)

Case 2 is based on an account opened by SAEED TEHRANI on October 19, 2009, at Targobank, domiciled in Dusseldorf, which had a negative balance of –€60.36 on March 15, 2011. (See id.)

Case 3 is based on an account opened by SAEED TEHRANI on October 15, 2009, at Sparkasse, domiciled in Aachen, which had a negative balance of –€6,934.65 on January 10, 2011. (See id.)

[9] More specifically, Case 4 is based on an account opened by TEHRANI on March 4, 2010, at Commerzbank, which had a negative balance of –€28,526.26 on March 31, 2011, and another account opened at the same bank on the same date by TEHRANI which had a negative balance of –€18,758.55 on December 13, 2010. (See arrest warrant, MJ 1 at 19 of 82.)

Case 5 is based on an account opened by TEHRANI on March 4, 2010, at Sparkasse, which had a negative balance of –€5,724.34 on March 15, 2011. (See id.)

bank in Aachen, in the amount of 281,000 euros, to purchase a property in Alsdorf, Germany – about 5 miles away from Aachen – from a third, separately-prosecuted individual named KEMAL BIRINCI ("BIRINCI"), for the purchase price of 315,000 euros through a public notary agreement dated March 24, 2010. (Prosecutor's Letter, MJ 1 at 12 of 82; see also Exhibit 1; see also Supplemental Letter dated July 4, 2016, ¶ 3a.) In the process, SAEED TEHRANI stated falsely that he was earning a monthly net income of 3020 euros as an employee of the company 4U Facilities Services Management GmbH. (Id.; see also arrest warrant, MJ 1 at 19-20 of 82.) In support of these false statements, SAEED TEHRANI submitted salary statements from the company that had been manipulated by him in advance. (Arrest warrant, MJ 1 at 19-20 of 82; see also Analysis Report of Police Officer Luzat dated July 1, 2011, at 008, CV 20-3 at 9 of 18 [noting discrepancies in earnings statements].)

Immediately after the disbursement of the 281,000 euro loan to BIRINCI on May 12, 2010, however, BIRINCI transferred 105,000 euros into an account of TEHRANI, which TEHRANI disposed of in cash. (Prosecutor's Letter at 3 of 8, MJ 1 at 12 of 82; see also arrest warrant, MJ 1 at 20 of 82.) BIRINCI was subsequently interviewed, and BIRINCI stated that the actual selling price for the home was 210,000 euros, and that the public notary agreement was simply to serve the purpose of getting a higher loan from the bank. (Id.) Only the initial loan installments were paid by SAEED TEHRANI; further payments were discontinued after the repayment of only 9,429 euros out of the 281,000 euro loan. (Id.)

d. Case 7

On December 2, 2010, at the Targo Bank in Aachen, Germany, SAEED TEHRANI attempted to have his credit limit increased by submitting false pay slips that had been manipulated in advance by he and TEHRANI. (Prosecutor's Letter, at 3-4 of 8; MJ 1 at 12-13 of 82.) The false pay slips were salary statements of the company 4U Facilities Services Management GmbH and of the successor company Top Quality Services GmbH, as well as two employment contracts and a statement of income to deliberately feign the existence of an employment relation between SAEED TEHRANI and the company named above. (Arrest warrant; MJ 1 at 20 of 82.) In the talks held between SAEED TEHRANI and a Targo Bank employee during which SAEED TEHRANI was attempting to obtain the increase in credit limit, TEHRANI acted as an interpreter for SAEED TEHRANI. (Id.; see also Prosecutor's Letter at 4 of 8; MJ 1 at 13 of 82; see also Germany Supplemental Letter dated July 4, 2016, CV 20-3 at 7 of 18, ¶ 5b and c.) Targo Bank did not approve the increase. (Id.)

e. Case 8

SAEED TEHRANI submitted a false statement of earnings showing a high income to purchase a Nissan on January 28, 2011. (Prosecutor's Letter at 4 of 8; MJ 1 at 13 of 82.) With the collaboration of TEHRANI, TEHRANI's father submitted to Nissan Bank a falsified statement of income from the company Top Quality Service GmbH dated December 20, 2010, to deliberately and dishonestly feign an existing working relation with a high income. (Arrest warrant, MJ 1 at 21 of 82.) SAEED TEHRANI obtained a loan amount of 22,699.94 euros with the Nissan Bank to finance the purchase of the Nissan automobile, fraudulently misrepresenting his intentions to make payments on the

loan. (Id.; arrest warrant, MJ 1 at 21 of 82; see also Exhibit 2.) SAEED TEHRANI and TEHRANI subsequently paid only a total of €1,509.16 on the loan and discontinued payment. (Arrest warrant; MJ 1 at 20-21 of 82.) The involvement in TEHRANI in this case followed the same pattern as the circumstances described above. (Prosecutor's Letter at 4 of 8; MJ 1 at 13 of 82.)

Finally, with respect to all the offenses, because flight is a legitimate ground from which to infer guilt and may be used in the consideration of probable cause, Eain v. Wilkes, 641 F.2d 504, 511 (7th Cir. 1981), the Court should also consider that TEHRANI and his father both left Germany after the execution of the search warrant, TEHRANI's father was extradited from Sweden and convicted and sentenced in Germany, and TEHRANI was eventually arrested in the United States.

**III. CONCLUSION**

For the foregoing reasons, the United States requests the certification of FABIAN JALILVAND TEHRANI's extraditability to Germany on seven counts of completed Collusive Commercial Fraud, one count of attempted Collusive Commercial Fraud, and three counts of Collusive Commercial Falsification of Documents.